**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

RYAN CHRISTOPHER RODGERS,

     Plaintiff,

v.                                   No. CV 17-921 MV/CG

NANCY A. BERRYHILL, Deputy
Commissioner for Operations,
Social Security Administration,

     Defendant.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on Plaintiff Ryan Christopher Rodgers' *Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, With Supporting Memorandum* (the "Motion"), (Doc. 17), filed March 20, 2018; Defendant's *Brief in Response to Plaintiff's Motion to Remand Commissioner's Administrative Decision* (the "Response"), (Doc. 19), filed May 21, 2018; and Mr. Rodgers' *Reply to Brief in Response to Motion to Remand* (the "Reply"), (Doc. 20), filed June 4, 2018. United States District Judge Martha Vazquez referred this case to Magistrate Judge Carmen E. Garza to perform legal analysis and recommend an ultimate disposition. (Doc. 22).

On October 18, 2013, Becky Pritchett applied for supplemental security income on behalf of her child, Ryan Christopher Rodgers, who was not yet 18 years old. (Administrative Record "AR" 15). Ms. Pritchett alleged Mr. Rodgers' disability began on January 1, 2007, and is due to attention deficit hyperactivity disorder ("ADHD"), adjustment disorder with depression, bipolar mania, and schizophrenia. (AR 227-28). The claim was denied initially on February 26, 2014, and upon reconsideration on

October 6, 2014. (AR 15). A request for a hearing was filed, and a hearing was held on August 15, 2016, before Administrative Law Judge ("ALJ") Deirdre O. Dexter. (AR 41).[1] Mr. Rodgers and Bonnie Ward, an impartial vocational expert ("VE"), testified at the hearing, and Michelle Baca, an attorney, represented Mr. Rodgers at the hearing. (AR 41-71).

On September 28, 2016, the ALJ issued her decision, finding that Mr. Rodgers was not disabled either prior to or after the date he turned 18 years old. (AR 35). Mr. Rodgers requested review by the Appeals Council, which was denied, (AR 1-5), making the ALJ's decision the Commissioner's final decision for purposes of this appeal.

Mr. Rodgers, who is now represented by Francesca MacDowell, argues that the ALJ erred by: (1) failing to properly consider Mr. Rodgers' limitations in assessing his functioning as an adolescent; and (2) failing to properly consider the medical opinion evidence regarding Mr. Rodgers' mental limitations in determining his residual functional capacity ("RFC"). (Doc. 17 at 5-26). The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because the Court finds that the ALJ failed to properly consider Mr. Rodgers' limitations in her assessment of his functioning as an adolescent, and erred in considering the medical opinion evidence in determining his RFC, the Court recommends that Mr. Rodgers' motion be **GRANTED** and this case be **REMANDED** to the Commissioner for further proceedings.

## I. Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the

[1] Mr. Rodgers turned 18 on May 18, 2015. (AR 19).

correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008); *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or show . . . that she has done so, are grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting" it. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v.*

*Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.    Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income ("SSI"), a child under the age of eighteen is "disabled" when he "has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001) (citing 42 U.S.C. § 1382c(a)(3)(C)(i)). In light of this definition for disability, a three-step sequential evaluation process has been established for evaluating a child's disability claim. 20 C.F.R. § 416.924(a); *Briggs*, 248 F.3d at 1237. The ALJ "must determine, in this order, (1) that the child is not engaged in substantial gainful activity, (2) that the child has an impairment or combination of impairments that is severe, and (3) that the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404." *Briggs*, 248 F.3d at 1237 (citing 20 C.F.R. § 416.924(a)).

If, at step three, the impairment does not meet or equal a listed impairment, the ALJ must determine if the limitations caused by the child's impairments are functionally equivalent to a listed impairment. 20 C.F.R. 416.926a. The "functionally equivalent" analysis requires the ALJ to assess the child's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and

relating with others; (4) moving about and manipulating objects; (5) caring for self; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi); *Briggs*, 248 F.3d at 1238. If the child is extremely limited in one domain, or markedly limited in two domains, the impairment is functionally equivalent to the relevant listing and the child is disabled. 20 C.F.R. § 416.926a(a). A limitation is marked if the "impairment(s) interferes seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A limitation is extreme if the "impairment(s) interferes very seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

In a claim for SSI as an adult, a person eighteen years or older establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating an adult's disability claim. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At the first four steps of the sequential evaluation process, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[2] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. § 416.920(a)(4)(i-iv); *Grogan*,

_____

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

### III. Background

On October 18, 2013, Becky Pritchett applied for SSI on behalf of her son, Ryan Christopher Rodgers, due to ADHD, adjustment disorder with depression, bipolar mania, and schizophrenia. (AR 14, 227-28). Because Mr. Rodgers was under the age of eighteen when he applied for SSI, and turned eighteen during these proceedings, the ALJ determined whether Mr. Rodgers was disabled under the standards for both children and adults. Beginning with the sequential evaluation process for a person under the age of eighteen, at step one the ALJ found that Mr. Rodgers had not engaged in substantial gainful activity. (AR 19). At step two, the ALJ found Mr. Rodgers had the following severe impairments: ADHD, personality disorder, and affective disorder. (AR 20).

The ALJ then proceeded to step three. First, the ALJ determined that Mr. Rodgers' impairments did not meet or medically equal any of the listed impairments. (AR 20). She then found that Mr. Rodgers did not have an impairment or combination of impairments that functionally equaled any of the listings. *Id.* In making her determination, the ALJ stated that Mr. Rodgers' medically determinable impairments could reasonably be expected to produce the alleged symptoms, however Mr. Rodgers' statements concerning the intensity, persistence, and limiting effects of the symptoms

were not consistent with the medical and other evidence in the record. (AR 22). The ALJ based this finding on testimony given at the hearing, child function reports completed by Mr. Rodgers' mother, teacher reports, and medical records and opinions. (AR 20-24).

The ALJ considered the same evidence to make her functional equivalence finding. In terms of the six domains, the ALJ found that Mr. Rodgers had less than marked limitations in acquiring and using information; less than marked limitations in attending and completing tasks; less than marked limitations in interacting and relating with others; no limitations in moving about and manipulating objects; less than marked limitations in the ability to care for himself; and no limitations in health and physical well-being. (AR 24-30). Accordingly, she found that Mr. Rodgers was not disabled under the Social Security Act before the day he turned eighteen. (AR 30).

Next, the ALJ analyzed whether Mr. Rodgers was disabled after reaching the age of eighteen. She began with step two, noting that Mr. Rodgers had not developed any new impairments since attaining age eighteen, and that Mr. Rodgers continues to have severe impairments. (AR 30-31). At step three, the ALJ again determined that none of Mr. Rodgers' impairments, solely or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 416.920(d). (AR 31).

The ALJ proceeded to step four. She found that, since attaining age eighteen, Mr. Rodgers has the residual functional capacity to perform a full range of work at all exertional levels, with the following nonexertional limitations: he can perform simple, routine, and repetitive tasks, but not at a fast-paced production rate; the job should not require strict production quotas or involve close, over-the-shoulder type supervision; Mr. Rodgers cannot set his own work goals or make work plans independently of others; the

job should not involve more than ordinary and routine changes in work setting or work duties; Mr. Rodgers is able to make simple, work-related decisions; Mr. Rodgers is able to occasionally interact with supervisors as needed to receive work instructions; he is able to work in proximity to co-workers, but should have no more than occasional direct work interaction with co-workers; and he should never interact with the general public. *Id.* The ALJ noted that Mr. Rodgers has no past relevant work, and moved on to step five. (AR 33).

The ALJ stated that Mr. Rodgers is a "younger individual age 18-44" as defined by the Regulations, has a limited education, and is able to communicate in English. *Id.* The ALJ stated the VE testified at the hearing that an individual with Mr. Rodgers' same age, education, work experience, and RFC could perform the following representative occupations: dishwasher, industrial cleaner, bakery racker. (AR 34). After finding the VE's testimony to be consistent with the Dictionary of Occupational Titles, the ALJ concluded that, considering Mr. Rodgers' age, education, and transferable work skills, a finding of "not disabled" is appropriate under the framework of section 204.00 of the Medical-Vocational Guidelines. *Id.* Therefore, the ALJ found Mr. Rodgers has not been disabled since the day he turned 18 through the date of the decision, pursuant to 20 C.F.R. §§ 416.924(g) and 416.920(g). *Id.*

**IV.    Analysis**

*A. The ALJ's Assessment of Mr. Rodgers' Functioning as an Adolescent*

Mr. Rodgers first contends the ALJ erred in her assessment of whether he met the requirements for disability under the child benefits regulations. (Doc. 17 at 5). Specifically, Mr. Rodgers argues the ALJ erred in finding he did not have marked

limitations in the domains of: (1) interacting and relating with others; (2) attending and completing tasks; (3) caring for self; and (4) health and physical well-being. *Id.* at 5-20. He contends the ALJ failed to discuss probative evidence supporting a finding of marked limitations in each of these areas, and that the ALJ failed to compare Mr. Rodgers to non-disabled adolescents. *Id.* at 7-21.

The Commissioner responds that the ALJ reasonably assessed whether Mr. Rodgers functionally equaled one of the listings under the childhood disability standards, and that her findings are supported by substantial evidence. (Doc. 19 at 6-13). The Commissioner notes the ALJ considered Mr. Rodgers' testimony and the function reports completed by his mother, and then compared this subjective evidence with other evidence in the record. *Id.* at 7-10. The Commissioner contends the ALJ properly explained how her findings were supported by the evidence in the record, and that Mr. Rodgers' argument to the contrary invites the Court to reweigh the evidence and supplant the ALJ's decision. *Id.* at 10-12. Regarding Mr. Rodgers' claim the ALJ failed to compare him to non-disabled adolescents, the Commissioner argues the ALJ considered and discussed the exact evidence Mr. Rodgers cites to for this argument. *Id.* at 13.

In reply, Mr. Rodgers contends that, although the ALJ reviewed evidence relating to Mr. Rodgers' limitations, she failed to explain her analysis of the evidence and failed to cite to medical evidence that contradicts Mr. Rodgers' description of his symptoms. (Doc. 20 at 2-5). Mr. Rodgers states he is not asking the Court to reweigh the evidence and, instead, he is arguing the ALJ failed to properly weigh the evidence in the first place. *Id.* at 4. Mr. Rodgers further argues the ALJ erred by failing to discuss whether

Mr. Rodgers' need for educational accommodations made him less independent than his non-disabled peers. *Id.* at 5.

1.  *Interacting and Relating With Others*

This domain considers a "child's ability to initiate and respond to exchanges with other people, and to form and sustain relationships with family members, friends, and others." Social Security Ruling ("SSR") 09-5p, 2009 WL 396026, *2. "Important aspects of both interacting and relating are the child's responses to persons in authority, compliance with rules, and regard for the possessions of others." *Id.* Further, this domain is concerned with "the speech and language skills children need to speak intelligibly and to understand and use the language of their community." *Id.* The regulations provide that a child without an impairment should be able to initiate and develop friendships with children of the same age, relate appropriately to other children and adults, solve conflicts with peers and family members, and intelligibly express the child's feelings. 20 C.F.R. § 416.926a(i)(2)(v). Some examples of limited functioning in this area are when the child: has no close friends or all friends are older or younger than the child; avoids or withdraws from people he knows; is overly anxious or fearful of meeting new people; has difficulty playing games or sports with rules; or has difficulty communicating or speaking intelligibly or with adequate fluency. 20 C.F.R. § 416.926a(i)(3).

At step three of the ALJ's childhood disability determination, the ALJ discussed Mr. Rodgers' testimony, Ms. Pritchett's child function reports, school records, and medical notes and opinions. (AR 21-38). The ALJ noted Mr. Rodgers testified that he was bullied while in school and at home by his brother, he experienced feelings of

wanting to hurt himself and others, and he tried to hurt his brother on two occasions. (AR 21). In addition, the ALJ noted Mr. Rodgers discussed these feelings with his therapist who gave him exercises to clear his mind, and that Mr. Rodgers had not recently lashed out at his mother. *Id.* The ALJ also noted Mr. Rodgers' mother stated he acted out in school frequently and had problems getting along with others in school and at home. *Id.*

Turning to the medical evidence, the ALJ stated that a mental status examination in April 2016 revealed Mr. Rodgers had anger issues and high family stress, but that his thought process was goal directed and organized. (AR 22-23). The ALJ next considered the findings of two state agency consultants in August 2011 that Mr. Rodgers was less than markedly limited in the domain of interacting and relating with others. These consultants noted that Mr. Rodgers made violent threats to family, especially his brother who is abusive to him and antagonizes him. However, once his medications were adjusted, Mr. Rodgers' mother reported his angry outbursts stopped in February 2011. (AR 23). Nevertheless, the consultants noted he continued to display harmful behavior to some classmates and reported trouble keeping friends and feeling like a loner. (AR 23-24). In February and September 2014, additional state agency consultants evaluated Mr. Rodgers' records and concurred with the previous assessment of less than markedly limited in this domain. (AR 24). The ALJ stated she gave significant weight to the state agency consultants' opinions because they are consistent with the medical evidence in the record.

Based on this evidence, the ALJ found that Mr. Rodgers had a less than marked limitation in interacting and relating with others. (AR 27). The ALJ acknowledged Mr.

Rodgers' testimony that he did not get along with others and was bullied, Ms. Pritchett's statement that her son had problems getting along with others in school and at home, and that counseling notes reveal anger issues and fighting with family members. *Id.* However, the ALJ also noted evidence that Mr. Rodgers has friends and spends time with them, and that treatment and medications were having positive effects on Mr. Rodgers' ability to control his anger (AR 27). The ALJ also relied on the state agency consultants' assessments that found Mr. Rodgers was less than markedly limited in this area. (AR 28).

Mr. Rodgers contends the ALJ erred because the evidence in the record shows at least a marked limitation in this domain. (Doc. 17 at 7-11). Mr. Rodgers relies on treatment notes regarding episodes of angry outbursts, tendencies to isolate, difficulties making and maintaining friendships, and issues with communication. *Id.* at 8-11. He argues the ALJ did not perform a sufficient review of the evidence, especially regarding fighting at home and at school and his inability to communicate with others, and that the ALJ "merely repeated the conclusion of the non-examining doctors that there is not a marked limitation, with no explanation, which is error." *Id.* at 11.

Although there is evidence in the record that conflicts with the ALJ's finding that Mr. Rodgers does not have a marked limitation in interacting and relating with others, the existence of such evidence does not equate to legal error unless it significantly outweighs the evidence the ALJ relied on in making her determination. *See Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (stating that substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion" but that evidence is not substantial "if it is overwhelmed by other evidence."). While Mr.

Rodgers emphasizes evidence of angry outbursts, fighting, and problems communicating, he cites to no medical source opinion evidence supporting his contention he has a marked limitation in this domain. Moreover, the ALJ explained why she discounted the evidence presented by Mr. Rodgers by stating that treatment plans and medications were improving Mr. Rodgers' ability to control his anger. (AR 27). The ALJ also relied on the consultative examiners' unanimous opinions that Mr. Rodgers was less than markedly limited in this domain. (AR 28). Reasonable minds may differ as to the ALJ's conclusion, but the Court may not substitute its judgment for the ALJ's. *See Chavez v. Colvin*, Civ. No. 15-589, 2016 WL 8230701, *6 (D.N.M. Sept. 14, 2016) (unpublished) (explaining that, where "the ALJ has articulated substantial evidence," the claimant's "mere identification" of evidence that could potentially support a marked limitation "does not allow this Court to reweigh such evidence or substitute its judgment for that of the SSA"). Therefore, the Court finds that substantial evidence supports the ALJ's conclusion.

## 2. *Attending and Completing Tasks*

The functional domain of "attending and completing tasks" considers how well a child is able to focus and maintain attention, and how well the child begins, carries through, and finishes activities, including the pace at which the child performs activities and the ease with which the child changes activities. 20 C.F.R. § 416.926a(h). The regulations provide the following age descriptor for this domain:

> In your later years of school, you should be able to pay attention to increasingly longer presentations and discussions, maintain your concentration while reading textbooks, and independently plan and complete long-range academic projects. You should also be able to organize your materials and to plan your time in order to complete school

tasks and assignments. In anticipation of entering the
workplace, you should be able to maintain your attention on
a task for extended periods of time, and not be unduly
distracted by your peers or unduly distracting to them in a
school or work setting.

20 C.F.R. § 416.926a(h)(2)(v). Examples of limited functioning in attending and

completing tasks include: being easily startled, distracted, or over reactive to sounds,

sights, movements, or touch; being slow to focus on, or failing to complete, activities of

interest, such as games or art projects; repeatedly becoming sidetracked from activities

or frequently interrupting others; being easily frustrated and giving up on tasks; and

requiring extra supervision to keep engaged in an activity. 20 C.F.R. §

416.926a(h)(3)(i)-(v).

Here, the ALJ noted Mr. Rodgers testified he has difficulty interacting with other

students in class and in a work environment, and that Mr. Rodgers' mother stated he

has to be "coached to finish tasks, including his homework." (AR 26). The ALJ

considered school records noting Mr. Rodgers has issues completing work, attending

class, and staying on task, and that he has impulsive behavior. *Id.* The ALJ also

considered treatment notes finding: Mr. Rodgers has no hyperactivity; he is interactive,

polite, and cooperative with an organized thought process; his grades improved after his

medications were adjusted, though he was still unable to finish some tasks; he could

stay on task if he was interested in the subject, even attaining As and Bs in some

classes; and he enrolled in college classes after dropping out of high school. *Id.* at 22,

26. Finally, the ALJ relied on the state agency consultants' opinions which all assessed

Mr. Rodgers as less than markedly limited in this area based on their findings that, while

he has difficulty focusing and finishing some tasks, his grades improved after his medications were adjusted. *Id.*

Mr. Rodgers contends the ALJ's finding is contrary to substantial evidence in the record, such as Mr. Rodgers' diagnosis with ADHD when he was 10 years old, problems with attention and concentration in school, and problems completing homework or chores at home. (Doc. 17 at 12-13). Mr. Rodgers further cites school and medical notes that he was fidgety and had a flat affect, and that his school provided him accommodations such as preferential seating, minimized distractions, differentiated homework, and shorter examinations. *Id.* at 13. Mr. Rodgers argues the ALJ cited only one page of evidence for her determination, and states the evidence in the record shows he was not able to perform without limitations in this domain. *Id.* at 13-14.

As stated above, while there is evidence in the record that contradicts the ALJ's finding that Mr. Rodgers is less than markedly limited in this domain, that does not necessarily mean the ALJ erred in her decision. Mr. Rodgers contends the ALJ relied on only one page of evidence for her determination, but the ALJ's decision cites to many pages in the record, including Mr. Rodgers' testimony, school records, and medical treatment notes. *See* (AR 26-27) (citing AR 178-217; 240-49; 384-462; and 584-603). Moreover, the ALJ stated she based her decision on evidence in the record showing Mr. Rodgers: is not hyperactive; is interactive, polite, and cooperative with an organized thought process; showed improvement in his grades after his medications were adjusted; could stay on task if he was interested in the subject; and enrolled in college classes. (AR 26). The ALJ also relied on the unanimous findings by the state agency consultants that Mr. Rodgers was less than markedly limited in this area. *Id.* Mr.

Rodgers again cites to no medical source opinion evidence supporting his contention he has a marked limitation in this domain.

Mr. Rodgers also contends the ALJ erred in her finding because the evidence shows he "was not able to perform in this domain as a normal adolescent, who maintains attention on tasks for extended periods of time, and is not unduly distracted by or distracting to peers in a school or work setting." (Doc. 17 at 13-14). The standard for finding a marked limitation is when a claimant's impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain or complete activities," and a marked limitation "means a limitation that is 'more than moderate' but 'less than extreme.'" 20 C.F.R. § 416.926a(e)(2)(i). Therefore, even though the record includes evidence that Mr. Rodgers has limitations in this area, the ALJ had to determine whether those limitations were more than moderate. Because the ALJ supported her decision with the substantial evidence discussed above, the Court finds the ALJ did not err in her finding that Mr. Rodgers was less than markedly limited in the domain of attending and completing tasks. *See, e.g., Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (explaining an ALJ is not required to discuss every piece of evidence in the record).

### 3. *Caring for Self*

This domain considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies his physical and emotional wants and needs in appropriate ways. 20 C.F.R. § 416.926a(k). This domain focuses on the child's "personal needs, health and safety," and requires that the child use age-appropriate strategies "to identify and regulate the child's feelings, thoughts, urges, and intentions,"

and to respond to "circumstances in safe and appropriate ways, making decisions that do not endanger the child." 20 C.F.R. § 416.926a(k)(1)(i)-(iv). A child with limited functioning in this domain include: not dressing or bathing age-appropriately; engaging in self-injurious behavior (e.g., suicidal thoughts or actions, self-inflicted injury, or refusal to take medication); not spontaneously pursuing enjoyable activities or interests; or having disturbances in eating or sleeping patterns. 20 C.F.R. 416.926a(k)(3).

In assessing Mr. Rodgers' limitations in this domain, the ALJ relied on Mr. Rodgers' mother's statements that he has to be coached to do homework and to put his clothes away, and noted medical records indicating Mr. Rodgers is non-compliant with taking his medications, talks about suicide, and looks disheveled and unkempt at appointments. (AR 29). In contrast, the ALJ noted Mr. Rodgers scored a 96 percent on his drivers' test, was getting regular sleep, and that at one appointment he had appropriate hygiene and was groomed. *Id.* Finally, the ALJ relied on the state agency consultants' opinions that Mr. Rodgers is less than markedly limited in this domain. (AR 30).

Mr. Rodgers contends there is substantial evidence in the record that shows Mr. Rodgers was markedly limited in this area. (Doc. 17 at 14-17). Mr. Rodgers cites to treatment notes from 2008, 2010, 2011, 2012, and 2013 showing he expressed suicidal thoughts to his mother and to psychologists on a regular basis. *Id.* at 14-15 (citing AR 186, 289, 316-17, 366, 372, 485, 510-12, and 547-48). He also cites multiple school and medical notes demonstrating his failure to bathe regularly, wearing dirty clothes in public, tardiness to school, failure to take his medications, and hearing voices. *Id.* at 16-17 (citing AR 244, 247, 470-72, 520-24, 528-31, 535, 540-41, 586, and 589).

The Tenth Circuit has explained that suicidal ideation and failure to take psychotropic medications indicate a marked, if not extreme, impairment in the "caring for self" domain. *Knight v. Colvin*, 756 F.3d 1171, 1178 (10th Cir. 2014). In *Knight*, the ALJ found the claimant had a less than marked limitation in this domain despite evidence in the record of the claimant's suicidal thoughts and failure to consistently take medication, because the ALJ stated the suicidal ideation was "being addressed with therapy." *Id.* The Tenth Circuit reversed, stating the ALJ did not provide sufficient support for the ALJ's decision. *Id.* Specifically, the Tenth Circuit stated "the fact that [the claimant's] suicidal ideation was 'being addressed with therapy' says nothing about the severity of [the claimant's] impairment in this domain," and that the ALJ failed to adequately discuss teacher questionnaires and the claimant's failure to consistently take her medication. *Id.*

Here, the ALJ supported her finding that Mr. Rodgers was less than markedly limited in this domain with evidence that Mr. Rodgers scored well on his drivers' test, was getting regular sleep, had good hygiene at one appointment, and that the state agency consultants opined he is less than markedly limited in this domain. (AR 29-30). The Commissioner argues that "the ALJ's findings are broadly consistent with" the evidence in the record, and that Mr. Rodgers urges the Court to supplant the ALJ's decision. (Doc. 19 at 10-11). However, the evidence relied on by the ALJ consists mostly of isolated instances of adequate self-care, and the ALJ did not explain why she found that this evidence outweighed evidence in the record of numerous reports of suicidal thoughts, failure to take medications, and poor hygiene. Moreover, the state agency consultants' opinions only mention two limited instances of suicidal thoughts

and failure to take medications, and do not discuss evidence of Mr. Rodgers' poor physical state. *See* (AR 75, 85, 95-96).

The Court is mindful that it may not reweigh the evidence or substitute its judgment for that of the ALJ. Nevertheless, the ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record." *Langley*, 373 F.3d at 1118; *see also Grogan*, 399 F.3d 1261-62 ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion. Moreover, all the ALJ's required findings must be supported by substantial evidence."). Here, the ALJ did not explain why she found that evidence of isolated instances of adequate self-care outweighed evidence of multiple and consistent reports of suicidal thoughts, failure to take medications, and poor hygiene. In addition, while the ALJ gave great weight to the state agency consultants' opinions, those opinions similarly rely on only limited portions of the evidence in the record. Absent a specific weighing of the relevant evidence, the Court is unable to meaningfully review the ALJ's findings. *See Clifton*, 79 F.3d at 1009. Therefore, the Court finds the ALJ failed to adequately assess the severity of Mr. Rodgers' ability to care for himself in light of all the evidence in the record.

### 4. Health and Physical Well-Being

In the domain of health and physical well-being, the ALJ must consider the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on a child's functioning. 20 C.F.R. § 416.926a(l). Thus, the "domain addresses how such things as recurrent illness, the side effects of medication, and the need for ongoing treatment affect a child's body; that is, the child's health and sense of physical well-being." SSR 09-8p, 2009 WL 396030, at *2. "In all cases, it is

important to remember that the cumulative physical effects of a child's physical or mental impairment(s) can vary in kind and intensity, and can affect each child differently." *Id.* at *3. Examples of limitations in health and physical well-being include: generalized symptoms, such as weakness, dizziness, agitation, lethargy; somatic complaints related to the impairments (e.g., seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches, or insomnia); limitations in physical functioning because of treatment; exacerbations from the impairment that interferes with the claimant's physical functioning; and evidence the claimant is medically fragile and needs intensive medical care to maintain the claimant's level of health and physical well-being. 20 C.F.R. § 416.926a(l)(4)(i)-(v). In addition, an ALJ may find marked limitations in this domain if the claimant is frequently ill because of the impairment, or has frequent exacerbations of the impairment that result in significant, documented symptoms or signs. 20 C.F.R. § 416.926a(e)(2)(iv).

Here, the ALJ found Mr. Rodgers had no limitations in the health and physical well-being domain. (AR 30). In support of this finding, the ALJ stated that Mr. Rodgers gets regular sleep and that "there is no indication in the medical evidence of record that the claimant has any physical conditions or limitations." *Id.* The ALJ further relied on the state agency consultants' findings that Mr. Rodgers had no or less than marked limitations in this area. *Id.*

Mr. Rodgers argues this finding was in error because he has been diagnosed with depression and a personality disorder, which indicates impairment in this domain. (Doc. 17 at 18). He notes that his mother reported in September 2014 that he had been

getting headaches, could not sleep through the night, had problems with nausea, and that his depression and mood swings were much worse. *Id.* at 19. In addition, Mr. Rodgers contends he has at least a marked limitation in this domain because his impairments led to issues with his functioning in school. *Id.* at 19-20. In response, the Commissioner contends the ALJ adequately discussed the evidence in the record and that Mr. Rodgers is simply asking the Court to reweigh the evidence. (Doc. 19 at 10-12).

In making her finding that Mr. Rodgers had no limitations in this domain, the ALJ did not discuss Mr. Rodgers' testimony, his mother's testimony, or medical evidence showing the effects of Mr. Rodgers mental impairments and treatments on his physical functioning. Instead, the ALJ stated that Mr. Rodgers gets regular sleep and that there is no indication in the record of physical conditions or limitations. (AR 30). By doing so, the ALJ ignored evidence in the record that Mr. Rodgers has heard voices and hallucinated, and has had recurrent episodes of headaches, trouble sleeping, and nausea. *See* (AR 252, 253, 478, 498, 535, and 610). It is error for an ALJ to ignore significantly probative evidence that contradicts her findings. *Smith ex rel. E.S.D. v. Barnhart*, 157 Fed. Appx. 57, 63 (10th Cir. 2005) (unpublished). Moreover, even though an ALJ need not consider every piece of evidence in the record, she must "discuss the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects." *Clifton*, 79 F.3d 1007 at 1009-10. Therefore, the ALJ was required to discuss evidence of the physical effects of Mr. Rodgers' mental impairments and their associated treatments and therapies. *See* 20 C.F.R. § 416.926a(l); *see also* SSR 09-8p, 2009 WL 396030, at *2 (explaining that this domain requires ALJs to discuss how "recurrent illness, the side effects of medication, and the

need for ongoing treatment affect a child's body; that is, the child's health and sense of physical well-being.")

The Commissioner contends the ALJ sufficiently supported her decision by relying on the state agency consultants' opinions which found that Mr. Rodgers was not markedly limited in this domain. (Doc. 19 at 12-13). An ALJ must weigh medical source opinions considering factors such as the length of the treatment relationship and the frequency of examination, the degree to which the physician's opinion is supported by relevant evidence, and consistency between the opinion and the record as a whole. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003); *see also* 20 C.F.R. § 416.927(c)-(d). Here, the state agency consultants' opinions do not account for evidence showing Mr. Rodgers heard voices, hallucinated, and has a history of headaches, nausea, and trouble sleeping; instead, they state there is no history of physical impairments. (AR 75, 85, 96). Because the state agency consultants' opinions rely on only limited portions of the evidence in the record, they cannot provide sufficient support for the ALJ's findings. *See Grogan*, 399 F.3d at 1261-62 ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion.").

Based on the foregoing, the Court finds the ALJ erred in her assessment of the evidence in the "caring for self" and "health and physical well-being" domains. The Court does not reach Mr. Rodgers' claim that the ALJ failed to consider his functioning in comparison to non-disabled adolescents because that claim may become moot upon remand. On remand, however, the ALJ must consider the interactive and cumulative effects of Mr. Rodgers' impairment, including how appropriately, effectively, and

independently he performs his activities "compared to the performance of other children of the same age who do not have impairments," in compliance with 20 C.F.R. § 416.926a(b) and SSR 09-2p, 2009 WL 396032.

### B. *The ALJ's RFC Determination*

Next, Mr. Rodgers argues the ALJ erred in assessing Mr. Rodgers' RFC for the time period after he became an adult. (Doc. 17 at 25-26). Specifically, Mr. Rodgers contends the ALJ erred by failing to explain why she rejected Dr. Flammer's opinions regarding Mr. Rodgers' limitations in attention and concentration in performing tasks. *Id.* at 25-26. He further argues the ALJ failed to provide sufficiently specific reasons for the weight she gave to the state agency consultants' assessments, and that the ALJ should not have relied on the consultants' opinions for the RFC determination because they did not review evidence dated after Mr. Rodgers turned eighteen. *Id.*

In response, the Commissioner states the ALJ's RFC determination is supported by substantial evidence. (Doc. 19 at 13). The Commissioner contends the ALJ accounted for Mr. Rodgers' concentration, persistence, and pace limitations by limiting the RFC to simple, routine, and repetitive tasks, and excluding work environments with fast-paced production rates and strict production quotas. *Id.* at 15-17. The Commissioner further argues Dr. Flammer's opinions regarding Mr. Rodgers' attention and concentration were in regard to Mr. Rodgers' performance during psychological testing, and were "not directly about [Mr. Rodgers'] ability to perform work-related tasks." *Id.* at 17. In addition, the Commissioner argues the ALJ sufficiently discussed the state agency consultants' opinions, and that the ALJ did not err by relying on opinions based on evidence from before Mr. Rodgers turned 18. *Id.* at 16-17.

ALJs must evaluate and weigh every medical opinion in the record, including the opinions of non-examining state agency physicians. 20 C.F.R. § 416.927(c); *see also* SSR 06-03p, 2006 WL 2329939. Every medical source opinion should be weighed by the ALJ in consideration of the following applicable "deference factors":

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citation omitted); *see also* 20 C.F.R. § 416.927(c)-(d). Ultimately, the ALJ must give good reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" for the weight that she ultimately assigns the opinions. *Langley*, 373 F.3d at 1119 (citation omitted). Failure to do so constitutes legal error. *See Kerwin v. Astrue*, 244 Fed. Appx. 880, 884 (10th Cir. Aug. 8, 2007) (unpublished).

In addition, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted). Instead, an ALJ "must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7. Further, the Commissioner may not rationalize the ALJ's decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

Dr. Flammer performed a psychological consultative examination of Mr. Rodgers on September 9, 2015. (AR 671-74). In his report, Dr. Flammer found that Mr. Rodgers required extra time to complete tasks, would often lose his focus, and required repetition of questions and instructions. (AR 671). Dr. Flammer assigned Mr. Rodgers a full scale IQ of 90, which is in the average range and at the 25th percentile, stating that Mr. Rodgers' "general intellectual abilities are primarily within the average range with a relative weakness on processing speed tasks." (AR 672). In addition, Dr. Flammer found that Mr. Rodgers had "significant attention deficits," and demonstrated "gaps in his sustained attention." (AR 673).

In her decision, the ALJ noted that Dr. Flammer assigned Mr. Rodgers an IQ score of 90, and that Dr. Flammer noted Mr. Rodgers had a weakness in processing speed tasks and completed many tasks more slowly than his peers. (AR 32). In addition, the ALJ stated that Dr. Flammer found Mr. Rodgers' academic abilities were predominantly in the average range. The ALJ stated she gave Mr. Flammer's opinions great weight "because he is a specialist who based his opinions/recommendation on extensive testing and analysis." *Id.*

While the ALJ stated she gave Dr. Flammer's opinions great weight, she did not include many of his findings in her RFC determination. For example, the ALJ did not account for Dr. Flammer's findings that Mr. Rodgers: required extra time to complete tasks; would often lose his focus; required repetition of questions and instructions; had weak processing speed; and had significant attention deficits and gaps in his sustained attention. *Compare* (AR 31) *with* (AR 671-73). Therefore, the ALJ rejected some of Dr.

Flammer's opinions without explaining why, which is legal error. *See Clifton*, 79 F.3d 1009 (holding that "the absence of findings supported by specific weighing of the evidence" in the record leaves the Court unable to assess whether relevant evidence adequately supports the ALJ's conclusion); *see also Haga*, 482 F.3d at 1208 ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.").

The Commissioner argues the ALJ properly accounted for Dr. Flammer's opinions regarding Mr. Rodgers' limitations in concentration, persistence, and pace by limiting the RFC to simple, routine, and repetitive tasks, and excluding work environments with fast-paced production rates and strict production quotas. (Doc. 19 at 15-17). However, the Tenth Circuit has explained that a limitation to simple, routine, and repetitive tasks does not account for limitations in a claimant's abilities to pay attention and concentrate. *See Jaramillo v. Colvin*, 576 Fed. Appx. 870, 875-76 (10th Cir. Aug. 27, 2014) (unpublished) (finding the ALJ's limitation to simple, routine, and repetitive tasks did not capture a doctor's findings of limitations in the claimant's ability to attend and concentrate); *see also* the Social Security Administration's Program Operations Manual DI 25020.010 B.2.a. (stating that all jobs require "[t]he ability to maintain concentration and attention for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)," and that these requirements "are usually strict"). Because Dr. Flammer's findings are not reflected in the ALJ's RFC determination, despite the ALJ stating she gave great weight to his opinions, the ALJ inappropriately "'us[ed] portions of evidence favorable to [her] position while ignoring other evidence.'" *Carpenter*, 537 F.3d at 1265. This selective application

of Dr. Flammer's report without explanation is error, and requires a remand in order for the ALJ to explain the evidentiary basis for her RFC determination.

The Commissioner also argues Dr. Flammer's opinions regarding Mr. Rodgers' attention and concentration were in regard to Mr. Rodgers' performance during psychological testing, and were "not directly about [Mr. Rodgers'] ability to perform work-related tasks." (Doc. 19 at 17). This was not given by the ALJ as a reason for her rejection of Dr. Flammer's opinions, however, so this is an improper *post hoc* rationalization by the Commissioner. *See Carpenter*, 537 F.3d at 1267 ("Judicial review is limited to the reasons stated in the ALJ's decision."). Therefore, the Court may not adopt this reason in order to affirm the ALJ. *Id.*

For the reasons discussed above, the Court concludes that the ALJ failed to properly weigh Dr. Flammer's opinions. The Court does not address Mr. Rodgers' claim that the ALJ improperly weighed the opinions of the state agency consultants because that claim may become moot by the proceedings conducted or the disposition reached on remand. However, the Court instructs the ALJ on remand to properly weigh all medical opinions, which includes providing adequate explanations of the weight given to each opinion as it relates to the ALJ's findings.

## V.    Recommendation

For the reasons stated above, the Court finds that the ALJ erred in her assessment of the evidence in the "caring for self" and "health and physical well-being" domains under the child benefits regulations. The Court further finds the ALJ failed to properly weigh Dr. Flammer's medical opinions in assessing whether Mr. Rodgers was disabled after he became an adult.

**IT IS THEREFORE RECOMMENDED** that Mr. Rodgers' *Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, With Supporting Memorandum*, (Doc. 17), be **GRANTED**, and that this case be **REMANDED** to the Commissioner for further proceedings.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE